UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DANIELLA BONHOMME; TATIANA POULARD; AMINIQUE KIRNON; SELINA SACASA; and QUANTAVIA GRANT,<br><br>Plaintiffs,<br><br>- against -<br><br>DENNY'S, INC., DFO, LLC, DENNY'S CORPORATION, GILLS BLOOMSBURG INC. D/B/A DENNY'S,<br><br>Defendants. | Case No. 4:25-cv-02094<br><br>**FIRST AMENDED COMPLAINT**<br><br>**PLANTIFF DEMANDS A TRIAL BY JURY** |

Plaintiffs Daniella Bonhomme, Tatiana Poulard, Aminique Kirnon, Selina Sacasa, and Quantavia Grant ("Plaintiffs"), by and through their undersigned counsel, Elefterakis, Elefterakis & Panek, respectfully submit this First Amended Complaint against Denny's, Inc., DFO, LLC, Denny's Corporation, and Gills Bloomsburg Inc. d/b/a Denny's ("Defendants"). Plaintiffs respectfully allege as follows, upon information and belief:

**PRELIMINARY STATEMENT**

1.   Overt racism is not dead in 2024, especially not at Denny's. At Denny's, incident after incident of proven racial discrimination appears to have had no impact whatsoever on the conduct of franchisees and their employees.[1] To the contrary, racial discrimination is more entrenched and the need for vigorous enforcement of civil rights laws is more vital than ever.

---

[1] Stephen Labaton, Denny's Restaurants to Pay $54 Million in Race Bias Suits, NYT, May 25, 1994.

2. On January 14, 2024, the Plaintiffs—five Black women—were humiliatingly denied seating and service at the Denny's in Bloomsburg, Pennsylvania ("Denny's Bloomsburg" or "Restaurant") simply because of the color of their skin.

3. A Denny's Bloomsburg employee refused Plaintiffs' service due to alleged "flickering" lights at the restaurant. Despite the alleged flickering lights, Plaintiffs observed that other white patrons were seated and the restaurant was operating without issue.

4. Clearly, the alleged "flickering" lights were nothing more than a pretext for blatant racial discrimination. In reality, the sole reason that Denny's Bloomsburg refused to seat and serve Plaintiffs was due to their race.

5. Plaintiffs were justifiably upset and insulted by their abhorrent treatment, so they captured video of the fully functioning restaurant and posted it to TikTok, detailing the discrimination. The video garnered over 40,000 views and sparked immediate outrage.

6. Denny's, Inc., DFO, LLC, and Denny's Corporation (collectively "the Denny's Corporate Entities") contacted Plaintiff Aminique Kirnon ("Plaintiff Kirnon") in an effort to quiet the outrage and conceal the discriminatory conduct of its franchisee, Denny's Bloomsburg. Strategically, the Denny's Corporate Entities tapped a Black employee, Chioke Elmore ("Ms. Elmore"), Vice President of, upon information and belief, one of the Denny's Corporate Entities, to placate and persuade Plaintiff Kirnon that Defendants refusal to serve Plaintiffs was not discriminatory.

7. Ms. Elmore proceeded to gaslight Plaintiff Kirnon, telling her "I look like you and I wouldn't want to work here if they didn't want people like us to eat here."

8. Even worse, Ms. Elmore furthered Defendants campaign of discrimination by insultingly offering Plaintiff Kirnon a free Denny's meal in an attempt to remedy the blatant racial

discrimination the Plaintiffs suffered, as if a Denny's Grand Slam could wipe away the emotional distress from the harrowing violation of Plaintiffs' civil rights.

9. Given the Denny's Corporate Entities' willingness to step in and defend Denny's Bloomsburg, with the Denny's Corporate Entities essentially serving as a "clean-up crew" for racial discrimination, it is no surprise that Denny's Bloomsburg feels so comfortable engaging in blatant racial discrimination.

10. Plaintiffs hereby bring this action to actually and fairly remedy this execrable violation of their civil rights and to ensure that the Denny's Corporate Entities and Denny's Bloomsburg cease their well-documented pattern of racial discrimination.

## NATURE OF THE ACTION

11. Plaintiffs complain of unlawful public accommodation discrimination by Defendants in violation of (i) **Section 1981 of the Civil Rights Act of 1866**, 42 U.S.C. § 1981; (ii) **Title II of the Civil Rights Act of 1964**; 42 U.S.C. § 2000a; (iii) **The Pennsylvania Human Relations Act**, 43 P.S. § 951 *et seq.*; and any other claim(s) that can be inferred from the facts set forth herein. Plaintiffs seek damages to redress the injuries they suffered as a result of being discriminated against by Defendants on the basis of their race (Black).

## THE PARTIES

12. Plaintiff Daniella Bonhomme is a Black female who is a resident of the State of New York. Ms. Bonhomme is a Masters-educated and licensed marriage-and-family therapist.

13. Plaintiff Tatiana Poulard is a Black female who is a resident of the State of New York. Ms. Poulard is a Patient Care Technician licensed in Phlebotomy and a Certified Nurse Assistant.

14. Plaintiff Aminique Kirnon is a Black female who is a resident of the State of New York. Plaintiff Kirnon has been an elementary school teacher for over a decade and proudly holds three Master's degrees.

15. Plaintiff Selina Sacasa is a Black female who is a resident of the State of Georgia. Ms. Sacasa is a Station Supervisor for New York City's Metropolitan Transportation Authority (MTA).

16. Plaintiff Quantavia Grant is a Black female who is a resident of the State of New York. Ms. Grant is a Crisis Paraprofessional with an Advanced Skills Teacher classification.

17. Defendant Denny's, Inc. is listed as a Foreign Business Corporation in the Commonwealth of Pennsylvania. Upon information and belief, Denny's, Inc. is a Delaware corporation with its headquarters in South Carolina and operates, manages, and enforces brand standards, policies, and procedures applicable to franchise Denny's restaurant locations.

18. Defendant Gills Bloomsburg Inc. is a Domestic Business Corporation formed in the Commonwealth of Pennsylvania. Upon information and belief, Gills Bloomsburg Inc. is the franchisee that owns and operates the Denny's restaurant located in Bloomsburg, PA, at 131 Paper Mill Road, that was visited by Plaintiffs on January 14, 2024.

19. Defendant DFO, LLC, is a limited liability company under the State of Delaware with its headquarters in South Carolina. Upon information and belief, DFO, LLC, is the sole owner of Defendant Denny's, Inc. and enters into franchise agreements with individual franchisees to operate Denny's branded restaurant locations.

20. Defendant Denny's Corporation is a Delaware corporation with its headquarters in South Carolina. Upon information and belief, Denny's Corporation is the ultimate parent company of Denny's restaurant system.

21. Upon information and belief, DFO, LLC, which is Denny's Corporation's wholly owned subsidiary, serves as Denny's franchisor and holds Denny's trademarks.

22. Upon information and belief, Denny's Corporation exercises control over the operations of its affiliated entity, Denny's, Inc., which operates Denny's restaurants and enters into contracts and employment-related relationships on behalf of the Denny's system.

23. Upon information and belief, the Denny's Corporate Entities share a common ownership interest, jointly operate, exercise shared control, and act in concert with respect to the conduct alleged herein.

## JURISDICTION AND VENUE

24. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the Pennsylvania law claim pursuant to 28 U.S.C. § 1367.

25. This Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000 and the Plaintiffs and Defendants are citizens of different states.

26. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because a substantial part of the events and/or omissions giving rise to the claims occurred in the Middle District of Pennsylvania.

## PROCEDURAL PREREQUISITES

27. Plaintiffs have timely filed a complaint with the Pennsylvania Human Relations Commission ("PHRC"), upon which this Complaint is based.

28. The PHRC issued a Probable Cause finding against Denny's Bloomsburg on June 6, 2025. A copy of the Notice is annexed to this Complaint. (Exhibit A)

29. On July 14, 2025, the PHRC issued Plaintiffs a Right to Sue letter, permitting this action to move forward under Section 12(c) of the Human Relations Act, 43 P.S. § 962 (c). A copy of the Notice is annexed to this Complaint. (Exhibit B)

**FACTUAL ALLEGATIONS**

I. **Denny's Sordid History of Discrimination, Including at the Bloomsburg Restaurant**

30. Though the Denny's Corporate Entities and Denny's franchisees pay lip service to the value of diversity, their actions reveal a troubling pattern of discrimination and violations of civil rights. A cursory search reveals the following examples of discriminatory conduct repeated across the nation at Denny's restaurants:

- 1991, San Jose, California: A group of Black teenagers was denied service unless they consented to prepay for their meals, a policy not applied to other customers.

- 1993, Annapolis, Maryland: Six Black United States Secret Service agents experienced undue delay in service at a Denny's restaurant, witnessing their white counterparts receive immediate seating and service.

- 1994, Class Action Settlement: Denny's settled a class action lawsuit for $54.4 million, filed by Black customers who faced refusal of service, longer waits, or were asked to pay more than white customers. Upon information and belief, this settlement remains the largest under federal public accommodations laws to date.

- 1995, Sacramento, California: A Black customer was informed that he, along with his friends, had to prepay for their meals due to a previous incident involving other Black customers, clearly a discriminatory policy based on race.

- 1997, Syracuse, New York: Six Asian-American students were subjected to prolonged waits and eventually forced to leave by security, followed by a physical assault by other patrons, all under racially charged circumstances.

- 2007, Illinois Federal Court: A jury awarded $600,000 in a discrimination case against Denny's, further evidence of the systemic issues within the company regarding racial discrimination and violation of civil rights.

- 2014, Deming, New Mexico: An LGBT group reported homophobic slurs and refusal of service by Denny's staff, leading to a settlement including donations and retraining on discrimination policies.

- 2017, Vancouver, British Columbia: Allegations surfaced of an Indigenous female being forced to prepay for her meal unlike other customers, followed by staff reporting her to police under dubious circumstances.

- 2018, Lake City, Florida: A group of Black customers was refused service at a Denny's location.

- 2023, Sioux Falls, South Dakota: Black men were refused service at a Denny's location where Caucasian patrons were served.

31. Denny's Bloomsburg, located in a heavily Caucasian town[2], also exhibited multiple instances of discriminatory practices based on race.

32. Google reviews describe Denny's Bloomsburg discriminating against patrons of color, as Non-Caucasians have been subjected to subpar or outright refusal of service, while white patrons are tended to without issue.

33. For example, a reviewer stated, "I look Hispanic and my fiancé is African American and the couple who got immediate services was white," as he detailed their discriminatory experience at Denny's Bloomsburg in which they walked out after 40 minutes of being ignored, while Caucasian couples were serviced:

---

[2] Bloomsburg, a town in Pennsylvania on the I-80 corridor, is home to a population of 86.8% Caucasian, 4.2% Black, 8.2% Hispanic, and 1.3% Asian residents. See https://www.census.gov/quickfacts/fact/table/bloomsburgtownpennsylvania/PST045223.



34. Another reviewer states, "If you are white, from what I saw you would most likely have a great experience however, if you are American African, African American or any other race, I would not take a chance coming here unless you are ok with lower class service." The reviewer goes on to describe being purposefully neglected while Caucasian patrons were readily helped:



*(continued on next page)*



## II. Denny's Bloomsburg Unlawfully Discriminates Against Plaintiffs on the Basis of Their Race

35. Distressingly, on January 14, 2024, Denny's Bloomsburg and the Denny's Corporate Entities continued their pattern of discrimination, when they refused to sit or serve Plaintiffs simply because they are Black.

36. On January 14, 2024, during a trip to Pennsylvania, Plaintiffs utilized Google to locate a restaurant around them to eat lunch.

37. Plaintiffs' Google search indicated that there was a "Denny's" located at 131 Paper Mill Road, Bloomsburg, PA, and that the "Denny's" was currently open.

38. Plaintiffs decided to visit Denny's Bloomsburg based on Plaintiffs' previous experience visiting Denny's restaurants in New York.

39. The results of Plaintiffs' Google search provided no indication that the Denny's Corporate Entities do not own or operate Denny's Bloomsburg.

9

40. Plaintiffs were under the impression that Denny's Bloomsburg was owned and operated by one of the Denny's Corporate Entities.

41. Plaintiffs arrived at Denny's Bloomsburg at approximately 2:30 p.m., expecting to have lunch.

42. As Plaintiffs walked up to the entrance of Denny's Bloomsburg, Plaintiffs noticed the branding and logos of the Denny's Corporate Entities on multiple signs on the exterior of the building.

43. Before Plaintiffs even entered the restaurant, Plaintiffs were aggressively cut off in the vestibule by a Caucasian employee, Paige Wright, who denied them entry and service, proffering an excuse that the lights in the restaurant were "flickering."

44. Inside Denny's Bloomsburg, Plaintiffs noticed that there were multiple signs containing the Denny's Corporate Entities' branding and logo.

45. In addition, Wright and the other employees working in the restaurant had "Denny's" nametags on.

46. This claim of "flickering" lights was a pretextual excuse to refuse service to Plaintiffs on account of their race though they served White patrons while having "flickering lights." Indeed, as Plaintiffs left Denny's Bloomsburg, they witnessed numerous Caucasians dining in the restaurant.

47. Thereafter, Plaintiffs needed to use the restroom and went back into the restaurant, where they were closely monitored by the staff. Plaintiffs witnessed no lights flickering, and Caucasian patrons receiving polite and orderly service. Denny's Bloomsburg was conducting business as usual, white customers were enjoying their meals, the staff was bustling efficiently, and the ambiance was perfectly normal.

48. Realizing they were being discriminated against based on their race, Plaintiffs recorded video inside the restaurant.

49. The video Plaintiffs recorded does not show any "flickering" lights in the restaurant or any other disruption from normal restaurant functions, and even if it had, there was no disruption that would have prevented them from being seated.

50. This incident was traumatizing and humiliating to Plaintiffs, as it was clearly racially motivated.

51. The video taken inside Denny's Bloomsburg was posted to TikTok, where it garnered over 40,000 views and sparked justified outrage.

https://www.tiktok.com/@aimeemichelle_mimi/video/7324056045817564458?is_from_webapp=1&sender_device=pc&web_id=7353382282562242079

52. The logos, signage, and branding of the Denny's Corporate Entities are visible within the interior and exterior of Denny's Bloomsburg on multiple occasions during the video Plaintiffs posted to TikTok.

### III. Denny's Corporate Tacitly Acknowledges the Unlawful Discrimination and Attempts to Placate Plaintiffs with an Insulting Offer to Remedy the Discrimination by their franchise

53. Amid the uproar sparked by the TikTok video of the racist incident at the Denny's Bloomsburg, the Denny's Corporate Entities reached out to Plaintiff Kirnon for her email address.

54. On January 17, 2024, Michael Whitacre, Regional Franchise Director for, upon information and belief, one of the Denny's Corporate Entities, emailed Plaintiff Kirnon requesting her phone number to speak "about what happened." Plaintiff Kirnon replied to the email with another complaint, memorializing what occurred and providing her contact number.

55. On January 19, 2024, Plaintiff Kirnon was contacted via phone by Ms. Elmore, who identified herself as a Vice President of "Denny's".

56. Upon information and belief, Ms. Elmore is employed by one of the Denny's Corporate Entities.

57. Insultingly, Ms. Elmore furthered Denny's Bloomsburg's campaign of discrimination by offering Plaintiff Kirnon a free meal in a willful attempt to gaslight her and cause significant emotional distress. By inserting herself and purporting to "remedy" the situation, Ms. Elmore not only actively participated in the discrimination but also bound the Denny's Corporate Entities to the unlawful conduct, as her actions were taken on its behalf.

58. Evidently, Ms. Elmore's conversation with Plaintiff Kirnon and the offer of a free meal demonstrate that the Denny's Corporate Entities exercise an ongoing and systemic right of control over the policies and procedures of Denny's Bloomsburg, including the means and methods of how Denny's Bloomsburg conducts business on a daily basis.

59. Specifically, the Denny's Corporate Entities control the manner in which Denny's Bloomsburg investigates and responds to complaints and/or allegations of racial discrimination, evidenced by Ms. Elmore contacting Plaintiff Kirnon in response to her TikTok video alleging Denny's Bloomsburg discriminated against her and the other Plaintiffs.

60. Ms. Elmore, also a Black woman, attempted to gaslight Plaintiff Kirnon by stating, "I look like you, and I wouldn't want to work here if they didn't want people like us to eat here."

61. This statement, together with the offer of a free meal, was itself a direct part of the discriminatory conduct, as the Denny's Corporate Entities sought to provide cover for the unlawful treatment at Denny's Bloomsburg. With the Denny's Corporate Entities so willing and eager to

step in and provide cover for racial discrimination, it is no surprise that Denny's Bloomsburg is so emboldened to engage in blatant racial discrimination.

62. Moreover, Defendants deliberately exploited Ms. Elmore's identity as a "token" Black employee in a superficial effort to deflect accountability and avoid addressing the underlying racial discrimination, further perpetuating Plaintiffs' harm.

63. Plaintiffs bring this lawsuit to obtain redress and to ensure that Denny's ceases its long-standing pattern of discriminatory behavior, which is fostered and permitted by both the Denny's Corporate Entities and its individual franchises.

64. As a result of Defendants' actions, Plaintiffs feel extremely humiliated, degraded, victimized, embarrassed, traumatized, and emotionally distressed.

65. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of Section 1981, for which Plaintiff is entitled to the maximum allowable damages under this statute and an award of punitive damages.

**FIRST CAUSE OF ACTION**
**For Race Discrimination in Violation of §1981**
*Against All Defendants*

66. Plaintiffs repeat, restate, and re-allege the preceding paragraphs of this Complaint as if fully set forth herein.

67. Under 42 U.S.C. § 1981, "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts," which "includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(a)-(b).

13

68. Indeed, 42 U.S.C. § 1981 offers relief when racial discrimination blocks the *creation* of a contractual relationship, and its protections apply to all contracts, which undoubtedly includes restaurant purchases and services.

69. Plaintiffs are all Black women and Defendants intended to, and did, discriminate against them on the basis of their race. Namely, as more fully explained above, Defendant Denny's Bloomsburg refused to seat and serve Plaintiffs based on race and then the Denny's Corporate Entities attempted to gaslight and cover up the discrimination.

70. Defendants' racially discriminatory conduct abridged Plaintiffs' rights, including, but not limited to, their rights to equal treatment and ability to contract, as they could not order food like the other white patrons of Denny's Bloomsburg.

71. But for their race, Plaintiffs would not have suffered the loss of legally protected rights, including their rights to equal treatment and ability to contract.

72. As a result of the unlawful discriminatory conduct of Defendants in violation of 42 U.S.C. § 1981, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief, including compensatory damages.

73. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of 42 U.S.C. § 1981, for which Plaintiffs are entitled to the maximum allowable damages under this statute and an award of punitive damages.

**SECOND CAUSE OF ACTION**
For Race Discrimination in Violation of Title II
*Against All Defendants*

74.     Plaintiffs repeat, restate, and re-allege the preceding paragraphs of this Complaint as if fully set forth herein.

75.     Title II of The Civil Rights Act of 1964 states that "All persons shall be entitled to the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation, as defined in this section, without discrimination on the ground of race, color, religion, or national origin." 42 U.S.C. §2000a(a).

76.     42 U.S.C. §2000a(b)(2) provides, in relevant part, that "[e]ach of the following establishments is a place of public accommodation within this title if its operations affect commerce: (2) any restaurant, cafeteria, lunchroom, lunch counter, soda fountain, or other facility principally engaged in selling food for consumption on the premises . . . ."

77.     And 42 U.S.C. §2000a(c)(2) explains that the "operations of an establishment affect commerce within the meaning of this title if . . . (2) in the case of an establishment described in paragraph (2) of subsection (b), it serves or offers to serve interstate travelers or a substantial portion of the food which it serves or gasoline or other products which it sells, has moved in commerce."

78.     Plaintiffs are all Black women and Defendants intended to, and did, discriminate against them on the basis of their race. Plaintiffs attempted to exercise the right to full benefits and enjoyment of Denny's Bloomsburg, a place of public accommodation, but were denied the right to full benefits and enjoyment. Namely, as more fully explained above, Defendants refused to seat and serve Plaintiffs, who attempted to eat lunch at the Restaurant, whereas Denny's Bloomsburg did seat and serve white patrons during the same time period.

15

79. Defendants' racially discriminatory conduct abridged Plaintiffs' rights, including, but not limited to, their rights to equal treatment and enjoyment of services at Denny's Bloomsburg, which is a restaurant that serves or offers to serve interstate travelers. Moreover, upon information and belief, a substantial portion of the food that Denny's Bloomsburg serves has "moved in commerce."

80. The Denny's Corporate Entities planned, managed, and coordinated Denny's Bloomsburg's response to Plaintiffs' allegations of racial discrimination and unequal treatment by assigning Ms. Elmore to contact Plaintiff Kirnon regarding Plaintiffs' allegations of racial discrimination and unequal treatment.

81. The Denny's Corporate Entities, through Ms. Elmore, gaslighted Plaintiff Kirnon, stating: "I look like you and I wouldn't want to work here if they didn't want people like us to eat here."

82. The Denny's Corporate Entities, through Ms. Elmore, attempted to orchestrate an active cover up of Denny's Bloomsburg's racially discriminatory conduct, further discriminating against Plaintiffs, which resulted in the loss of their rights to equal treatment and services.

83. But for their race, Plaintiffs would not have suffered the loss of legally protected rights.

84. As a result of the unlawful discriminatory conduct of Defendants in violation of 42 U.S.C. §2000a, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief, including compensatory damages.

85. The unlawful discriminatory actions of Defendants constitute malicious, willful, and wanton violations of 42 U.S.C. §2000a, for which Plaintiffs are entitled to the maximum allowable damages under this statute and an award of punitive damages.

### THIRD CAUSE OF ACTION
**Race Discrimination in Violation of PHRA, 43 P.S. § 951 *et seq.***
*Against All Defendants*

86. Plaintiffs repeat, restate, and re-allege the preceding paragraphs of this Complaint as if fully set forth herein.

87. The Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 955(i)(1) provides, in relevant part, that:

> [i]t shall be an unlawful discriminatory practice...[f]or any person being the owner, lessee, proprietor, manager, superintendent, agent or employe of any public accommodation, resort or amusement to . . . [r]efuse, withhold from, or deny to any person because of his ***race,*** color, sex, religious creed, ancestry, national origin or handicap or disability . . . ***any of the accommodations, advantages, facilities or privileges of such public accommodation, resort or amusement.***

88. The PHRA also expressly defines the "term 'public accommodation, resort, or amusement'" to include "restaurants or eating houses." 43 P.S. § 954(*l*).

89. Plaintiffs are all Black women and Defendants intended to, and did, discriminate against them on the basis of their race. Plaintiffs attempted to exercise the right to full benefits and enjoyment of Denny's Bloomsburg, a place of public accommodation, but were denied the right to full benefits and enjoyment. Namely, as more fully explained above, Defendants refused to seat and serve Plaintiffs, who attempted to eat lunch at the Restaurant, whereas Denny's Bloomsburg did seat and serve white patrons during the same time period.

90. Defendants' racially discriminatory conduct abridged Plaintiffs' rights, including, but not limited to, their rights to equal treatment and the accommodations, advantages, facilities

17

or privileges of Denny's Bloomsburg, which is a restaurant that serves or offers to serve interstate travelers. Moreover, upon information and belief, a substantial portion of the food that Denny's Bloomsburg serves has "moved in commerce."

91. The Denny's Corporate Entities planned, managed, and coordinated Denny's Bloomsburg's response to Plaintiffs' allegations of racial discrimination and unequal treatment by assigning Ms. Elmore to contact Plaintiff Kirnon regarding Plaintiffs' allegations of racial discrimination and unequal treatment.

92. The Denny's Corporate Entities, through Ms. Elmore, gaslighted and further discriminated against Plaintiffs, which resulted in the loss of their rights to equal treatment and services.

93. But for their race, Plaintiffs would not have suffered the loss of legally protected rights.

94. As a result of the unlawful discriminatory conduct and practice of Defendants in violation of the PHRA, Plaintiffs have suffered, and continue to suffer, severe mental anguish and emotional distress, including, but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which they are entitled to an award of monetary damages and other relief, , including compensatory damages.

## **JURY DEMAND**

95. Plaintiffs demand a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiffs respectfully request a judgment against the Defendants:

A. Declaring that Defendants' discriminatory acts, conduct, and practices are prohibited by and violate 42 U.S.C. § 1981; 42 U.S.C. § 2000a; and The Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq.*

B. Awarding damages to Plaintiffs as will fully compensate them for their loss of rights, as well as for the humiliation, embarrassment, emotional distress, mental injury, pain and suffering, and injury to their reputations suffered due to Defendants' discriminatory acts, conduct, and practices, in an amount to be proven;

C. Awarding Plaintiffs punitive damages;

D. Awarding Plaintiffs their attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of this action; and

E. Awarding Plaintiffs such other and further relief as the Court may deem equitable, just and proper to remedy Defendants' unlawful, discriminatory acts, conduct, and practices.

Dated: January 26, 2026
    New York, NY

> Respectfully submitted,
>
> /s/_____
> Jacqueline Carranza, Esq.
> Keyonte Sutherland, Esq.
> Kyle Platt, Esq.
> Elefterakis, Elefterakis & Panek
> 80 Pine Street, 38th Floor
> New York, NY 10005
> jcarranza@eeplaw.com
> ksutherland@eeplaw.com
> kplatt@eeplaw.com
> *Attorneys for Plaintiff*